IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CINDY L. TAYLOR,                                   Case No. 6:15-cv-00284-SB

              Plaintiff,              **OPINION AND**
                                                              **ORDER**

    v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

              Defendant.

---

**BECKERMAN, Magistrate Judge.**

Cindy Taylor ("Taylor") appeals the Commissioner of the Social Security Administration's ("Commissioner") denial of her applications for Social Security disability insurance benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1381-83f. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the Court affirms the Commissioner's denial of Taylor's applications.

Page 1 - OPINION AND ORDER

## I. FACTS AND PROCEDURAL HISTORY

Taylor stands five-feet, eight-inches tall and weighs approximately 240 pounds. She was born in September 1967, making her forty-three years old on June 15, 2011, the alleged disability onset date.[1] Taylor has a high school education, and her past work experience includes time as a telephone solicitor, cashier, childcare provider, and solderer. Taylor alleges disability due primarily to bipolar disorder, anxiety, sensory integration disorder, posttraumatic stress disorder, back pain, and sciatic nerve pain.

On March 20, 2009, a little over two years before the alleged disability onset date, Taylor visited Dr. John Ward ("Dr. Ward") at Geary Street Internal Medicine, complaining of "left radicular symptoms" and wrist and back pain. (Tr. 285.) With respect to Taylor's back pain and left radicular symptoms, Dr. Ward noted that a magnetic resonance imaging ("MRI") test did not show any significant abnormalities. Dr. Ward also advised Taylor to treat her wrist pain with ice and rest, and to continue treating her left radicular pain with Neurontin based on Taylor's report that the medication seemed to be effective.

On January 6, 2012, one week before Taylor filed her applications for benefits, Taylor visited Dr. James Phelps ("Dr. Phelps") at Community Outreach, Inc., a free clinic located in Corvallis, Oregon. Taylor reported that her bipolar symptoms had been "better for quite a while," but she was no longer doing well and was "highly irritable." (Tr. 304.) Dr. Phelps chose not to increase Taylor's dosage of Divalproex due to concerns about weight gain, and instead added a dosage of lithium

---

[1] Taylor previously applied for Social Security benefits in 2006, but her application was denied. (Tr. 37, 68, 83.)

carbonate. When Taylor returned on January 20, 2012, she reported that she was having "more good days." (Tr. 303.)

On May 2, 2012, Taylor was referred to Dr. Todd Lewis ("Dr. Lewis") for a comprehensive orthopedic examination. Dr. Lewis prepared a report that set forth the following orthopedic impression: "The patient . . . complains of low back and left sciatic pain. She mainly has left hip region related symptoms though has benign radiographs. She also has an unstable left knee. There is evidence of . . . L5 dysfunction and some form of inflammatory left hip pathology is suspected." (Tr. 291.)

On May 4, 2012, Taylor was examined by Dr. Gale Smolen ("Dr. Smolen"), a psychiatric specialist, at the request of the Department of Disability Services. Dr. Smolen noted, among other things, that Taylor's thought processes were logical and goal directed, her remote memory was "hazy but basically intact," she was able to read, write, spell, and "make change," she knew "the average cost of a loaf of bread she buys," and her "[i]nsight into her illness was considereded intact" but her "[j]udgment was impaired." (Tr. 295.) Dr. Smolen's diagnoses were: bipolar disorder, posttraumatic stress disorder, poly-substance abuse in reported remission (Axis I); hysterectomy, knee surgery, and hypertension (Axis III); and "[i]nadequate finances, living with a couple, coping with a number of mental and physical illnesses" (Axis IV). (Tr. 296.) Dr. Smolen's diagnostic impression was that Taylor "is able to remember and understand with moderate impairment and concentrate and attend with mild to moderate impairment," but she cannot "get along well with people on a mental basis." (Tr. 296.)

On May 30, 2012, Dr. Linda Jensen ("Dr. Jensen"), a non-examining state agency physician, completed a physical residual functional capacity assessment. Dr. Jensen found that Taylor could lift

and carry twenty pounds occasionally and ten pounds frequently, stand and walk for up to two hours during an eight-hour workday, sit for up to six hours during an eight-hour workday, occasionally operate foot controls with the left lower extremity, stoop, kneel, crouch, and climb ladders, ropes, and scaffolds, and frequently crawl, balance, and climb ramps and stairs. Dr. Jensen also concluded that Taylor did not suffer from any manipulative, visual, communicative, or environmental limitations.

Dr. Michael Dennis ("Dr. Dennis"), a non-examining state agency psychologist, completed a psychiatric review technique assessment on June 1, 2012, wherein he evaluated Taylor's impairments under listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.09 (substance addiction disorders). After reviewing the relevant medical evidence, Dr. Dennis concluded that the limitations imposed by Taylor's impairments failed to satisfy listings 12.04, 12.06, and 12.09.

That same day, June 1, 2012, Dr. Dennis also completed a mental residual functional capacity assessment, which described Taylor as moderately limited in five of seventeen categories of mental activity, and not significantly limited in twelve. Dr. Dennis added: "[Taylor] is capable of but not limited to understanding, remembering and carrying out short and simple routine tasks. Is not capable of carrying out more complex tasks. Is capable of sustaining a regular workday/workweek." (Tr. 76.)

On July 25, 2012, Taylor was admitted to Samaritan Albany General Hospital based on complaints of chest pain, which occurred while Taylor was driving. (Tr. 325.) Taylor's test results ultimately proved to be unremarkable, and she was advised by Dr. Troy Pope ("Dr. Pope") to quit smoking.

Page 4 - OPINION AND ORDER

Taylor returned to Dr. Phelps' office on August 17, 2012. Taylor reported that she was "much worse since last seen," that she had been sitting in a "dark room for days at a time by [her]self," and that she was irritable and depressed. (Tr. 301.) Dr. Phelps' assessment was that the effect of Taylor's prescription for lithium carbonate had been "obscured by hypothyroid for the last several months." (Tr. 301.)

On August 28, 2012, Taylor completed an adult function report, in support of her applications for benefits.[2] Taylor stated that she cannot walk, sit, or stand for longer than thirty minutes due to hip, knee, and back pain, or be around people "because anything can make [her] very angry." (Tr. 235.) Taylor described her typical day as consisting of waking up and smoking a cigarette, using the computer, watching television most of the day in her bedroom by herself, caring for her cat, eating meals, and sleeping. Taylor added that she cannot do laundry or yard work because it "hurt[s] . . . too much," but she is capable of going to a "sports bar once a week to watch [her] friends play pool." (Tr. 239.)

On October 24, 2012, Dr. Martin Kehrli ("Dr. Kehrli"), a non-examining state agency physician, completed a second physical residual functional capacity assessment. Dr. Kehrli found that Taylor could lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk for up to two hours during an eight-hour workday, sit for up to six hours during an eight-hour workday, occasionally operate foot controls with the left lower extremity, stoop, kneel, crouch, and climb ladders, ropes, and scaffolds, and frequently crawl, balance, and climb ramps and stairs. Dr.

---

[2] Taylor's friends, Bridget Christensen ("Christensen") and Lacie Vosgien ("Vosgien"), also completed third-party adult function reports in support of Taylor's application for benefits. Christensen and Vosgien's reports largely reflect the same information as Taylor's report.

Kehrli also found that Taylor did not have manipulative, visual, communicative, or environmental limitations.

Dr. Kordell Kennemer, a non-examining state agency psychologist, completed a second psychiatric review technique assessment on October 26, 2012, wherein he evaluated Taylor's impairments under listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.09 (substance addiction disorders). After reviewing the relevant medical evidence, Dr. Kennemer concluded that the limitations imposed by Taylor's impairments failed to satisfy listings 12.04, 12.06, and 12.09.

Also on October 26, 2012, Dr. Kennemer completed a second mental residual functional capacity assessment, which described Taylor as moderately limited in four of seventeen categories of mental activity and not significantly limited in thirteen. Dr. Kennemer recommended that Taylor be limited to working independently and to occasional interaction with co-workers and the general public.

On February 21, 2013, Taylor visited Dr. Thomas Rafalski ("Dr. Rafalski") at Samaritan Albany General Hospital, complaining of lower quadrant pain. Dr. Rafalski stated that Taylor was suffering from "probable diverticulitis," he did not believe that Taylor needed a computerized axial tomography ("CAT") scan, and he wrote Taylor a prescription for Augmentin, Zofran, and Vicodin. (Tr. 327.)

An administrative law judge ("ALJ") convened a hearing on September 17, 2013, at which Taylor testified about the limitations resulting from her physical and mental impairments. Taylor, who was not represented by counsel at the hearing, testified that she stopped working in June 2010. Since that time, Taylor has relied on assistance from friends, food stamps, and unemployment

benefits to cover her day-to-day needs. Taylor reported that she is able to clean, cook, do laundry, prepare meals, care for an animal, play computer games, watch television, and shop at the grocery store, but she does not do well with crowds and is easily "irritated by people." (Tr. 46.) Taylor also stated that she was charged with failing to report suspected child abuse while serving as a daycare provider, and that she inaccurately represented that she was "ready, willing, and able to work" when she applied for and received unemployment benefits. (Tr. 47-48, 53.)

The ALJ posed a series of questions to a vocational expert ("VE") who testified at Taylor's hearing. The ALJ first asked the VE to assume that a hypothetical worker of Taylor's age, education, and work experience (1) could perform light exertion work activity (i.e., lift and carry twenty pounds occasionally and ten pounds frequently); (2) could push, pull, and operate foot controls on an occasional basis with the left lower extremity; (3) could occasionally crouch, interact with co-workers in non-teamwork settings, and interact with the general public in non-transactional settings; (4) could never direct others, work in close proximity to others or in an area with more than ten co-workers, operate a commercial vehicle, crawl, kneel, or climb ladders, ropes, and scaffolds; (5) needed to avoid concentrated exposure to unprotected heights, hazards, moving machinery, explosives, and firearms; and (6) could understand, remember, and carry out simple instructions. The VE stated that the hypothetical worker could be employed as a mailroom clerk, photocopy machine operator, and hand packager. The VE added that there were 71,000 mailroom clerk jobs, 26,000 photocopy machine operator jobs, and 129,000 hand packager jobs available in the national economy.

Responding to the ALJ's second hypothetical, the VE confirmed that a hypothetical worker who needed a sit-stand option (i.e., "the opportunity at approximately one hour intervals to either

Page 7 - OPINION AND ORDER

sit or stand or at least stand and stretch or sit down for . . . two minutes") could be employed in the three positions identified. (Tr. 60.) The VE testified that a hypothetical worker who was limited to sedentary exertion (i.e., lifting no more than ten pounds) could be employed as a final assembler, addresser, or table worker, and that there are 29,000 final assembler jobs, 25,000 addresser jobs, and 13,000 table worker jobs available in the national economy. Finally, the VE stated that the hypothetical worker could not sustain competitive employment if she was absent, tardy, or left work early once a week.

In a written decision issued on October 18, 2013, the ALJ applied the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), and found that Taylor was not disabled. *See infra* Part II.A-B. The Social Security Administration Appeals Council denied Taylor's petition for review, making the ALJ's decision the Commissioner's final decision. Taylor timely appealed to federal court.

## II. THE FIVE-STEP SEQUENTIAL PROCESS

### A.    Legal Standard

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are as follows:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal [one of the listed impairments]? (4) Is the claimant able to perform any work that he or she has

done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25. The claimant bears the burden of proof for the first four steps in the process. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of the first four steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the process, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

**B.    The ALJ's Decision**

At the first step of the five-step sequential evaluation process, the ALJ found that Taylor had not engaged in substantial gainful activity since June 15, 2011, the alleged disability onset date. At the second step of the sequential process, the ALJ found that Taylor had the severe medically determinable impairments of "anxiety disorder, major depressive disorder, left-sided major joint radiculopathy, mild spondylosis at L5-S1, myalgia/myositis not otherwise specified (NOS), and asthma."[3] (Tr. 12.)

---

[3] "When several core features of a particular diagnosis present themselves, but individual characteristics do not give rise to any one subcategory, a description of 'NOS,' meaning 'Not Otherwise Specified,' is given. A diagnosis followed by 'NOS' does not put the principal diagnosis in doubt." *Slaten v. Comm'r of Soc. Sec. Admin.*, No. 06–1660, 2008 WL 4192282, at *4 n.12 (D.N.J. Sept. 9, 2008) (citation omitted).

At the third step, the ALJ found that Taylor's combination of impairments was not the equivalent of those on the Listing of Impairments.[4] The ALJ then assessed Taylor's residual functional capacity ("RFC") and found that she could perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), subject to the following limitations:

> She is able to use her left lower extremity for no more than occasional push/pull activities, including the operation of foot controls. The claimant requires a sit/stand option. She cannot climb ladders, ropes or scaffolds. She should not crawl or kneel. She can crouch occasionally. She should not engage in commercial driving. She must avoid concentrated exposure to extreme cold, explosives, firearms, and workplace hazards, such as unprotected heights and hazardous machinery. The claimant can perform only simple instructions. She is able to tolerate no more than occasional, casual, brief interaction with the public. She can engage in occasional, casual, non-team-oriented interaction with coworkers. She should not be in a position to direct others. She can tolerate limited proximity to others and she does best when not exposed to groups of more than [ten] people.

(Tr. 14.)

At the fourth step, the ALJ concluded that Taylor was not capable of performing any past relevant work. At the fifth step, the ALJ concluded that there were other jobs existing in significant numbers in the national economy that Taylor could perform, such as a final assembler, addresser, and table worker. The ALJ thus found that Taylor was not disabled within the meaning of the Social Security Act.

### III. STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880,

---

[4] The Listing of Impairments is found at 20 C.F.R. Part 404, Subpart P, Appendix 1, and described at 20 C.F.R. §§ 404.1525, 404.1526, 416.925, 416.926.

882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett*, 180 F.3d at 1097). Instead, the district court must consider the entire record, weighing both the evidence that supports the Commissioner's conclusions, and the evidence that detracts from those conclusions. *Id.* However, if the evidence as a whole can support more than one rational interpretation, the ALJ's decision must be upheld; the district court may not substitute its judgment for the judgment of the ALJ. *Bray*, 554 F.3d at 1222 (citing *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## IV. DISCUSSION

In this appeal, Taylor argues that the ALJ erred by: (1) failing to offer specific, clear, and convincing reasons for discrediting her subjective symptom testimony; (2) failing to give germane reasons for rejecting the lay witness testimony provided by Taylor's friends; (3) failing to include bipolar disorder and posttraumatic stress disorder as severe impairments at step two of the sequential analysis; (4) failing to conclude at step three of the sequential analysis that Taylor is presumptively disabled under listings 12.04 and 12.06; and (5) failing to fully and fairly develop the record. As explained below, the Court concludes that the Commissioner's decision is supported by substantial evidence.

///

**A.    The ALJ Did Not Err in Discrediting Taylor's Symptom Testimony.**

**1.    Applicable Law**

In the Ninth Circuit, absent an express finding of malingering, an ALJ must provide specific,

clear, and convincing reasons for rejecting a claimant's testimony:

> Without affirmative evidence showing that the claimant is malingering, the [ALJ]'s
> reasons for rejecting the claimant's testimony must be clear and convincing. If an
> ALJ finds that a claimant's testimony relating to the intensity of his pain and other
> limitations is unreliable, the ALJ must make a credibility determination citing the
> reasons why the testimony is unpersuasive. The ALJ must specifically identify what
> testimony is credible and what testimony undermines the claimant's complaints.

*Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 597 (9th Cir. 1999) (citations omitted). Clear

and convincing reasons for rejecting a claimant's subjective symptom testimony "include conflicting

medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the

claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the

alleged symptoms, and testimony from physicians and third parties about the nature, severity and

effect of the symptoms complained of." *Bowers v. Astrue*, No. 6:11–cv–583–SI, 2012 WL 2401642,

at *9 (D. Or. June 25, 2012); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) ("[T]he

ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would

be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" (quoting *Fair v.*

*Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))).

In assessing a claimant's credibility, an ALJ may also consider (1) "ordinary techniques of

credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements

concerning the symptoms, and other testimony by the claimant that appears less than candid," and

(2) "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course

of treatment[.]" *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). If the ALJ's credibility finding is supported by substantial evidence in the record, district courts may not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citing *Morgan*, 169 F.3d at 600).

### 2.    Application of Law to Fact

There is no affirmative evidence that Taylor is malingering and, therefore, the ALJ was required to provide specific, clear, and convincing reasons for discrediting Taylor's testimony. As explained below, the Court concludes that the ALJ satisfied the clear and convincing reasons standard.

The ALJ provided several clear and convincing reasons for discounting Taylor's testimony. Most notably, the ALJ observed that Taylor "received Unemployment Benefits throughout 2011 and into 2012; however, [Taylor admitted that] she did not feel ready, willing and able to work during that time, even though this was a requirement in order to receive those financial benefits."[5] (Tr. 18.) It is proper for an ALJ to discount a claimant's testimony where, as here, she has made false representations in order to receive unemployment benefits. *See Locastro v. Colvin*, No. 14-5499, 2015 WL 917616, at *2 (W.D. Wash. Mar. 3, 2015) (holding that "the ALJ properly concluded Mr. Locastro's 'willingness to make inaccurate reports in order to receive benefits' undermined his credibility").

The ALJ also rejected Taylor's testimony based on medical noncompliance. (Tr. 19.) Medical noncompliance is a clear and convincing reason for discounting a claimant's credibility. *Bowers*,

---

[5] The relevant portion of the hearing transcript reads as follows: "Q. Do you recall whether, I think you told me you were required to report that you were ready, willing, and able to work, were you ready, willing, and able to work at that time? A. No, I wasn't." (Tr. 53.)

2012 WL 2401642, at *9; *Davies v. Colvin*, No. 6:14-cv-00491-MC, 2015 WL 4571107, at *4 (D. Or. July 28, 2015). Taylor argues that the record does not support the ALJ's assertion that she failed to consistently take her medications, or, alternatively, that such failure was due to her "impairment-related conditions, most particularly her memory." (Pl.'s Br. at 21.) The Court disagrees. There is evidence in the record indicating that Taylor was not compliant with her medications: "Medication recommendations: [Increase] compliance." (Tr. 306.) Moreover, there is evidence in the record suggesting that Taylor's medical noncompliance is not due simply to a deficient memory. To be sure, when Taylor visited Dr. Ward's office on April 16, 2010, she complained of recurrent pain in her lower back and left leg. (Tr. 282.) Dr. Ward wrote Taylor a prescription for physical therapy. (Tr. 283.) Nothing in the record indicates that Taylor followed up on Dr. Ward's prescription for physical therapy.[6]

The ALJ also "properly considered the lack of medical evidence corroborating [Taylor]'s testimony as one factor in his credibility determination." *Nikitchuk v. Astrue*, 240 F. App'x 740, 742 (9th Cir. 2007); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") Taylor argues that the other reasons provided by the ALJ are not supported by substantial evidence, and thus a lack of objective medical evidence cannot be

---

[6] The ALJ did not rely explicitly on Taylor's apparent failure to follow up on Dr. Ward's prescription for physical therapy. Nevertheless, it is appropriate for the Court to consider additional support for a ground on which the ALJ relied. *See Fenton v. Colvin*, No. 6:14–00350–SI, 2015 WL 3464072, at *1 (D. Or. June 1, 2015) ("The Court is not permitted to affirm the Commissioner on a ground upon which the Commissioner did not rely, but the Court is permitted to consider additional support for a ground on which the ALJ relied.").

the sole ground for the ALJ's credibility determination. This argument lacks merit for the reasons described above.

Finally, the ALJ concluded that Taylor's infrequent treatment history undermined her credibility. (Tr. 19.) An ALJ may properly discount a claimant's credibility based on an infrequent treatment history. *See Mitchell v. Colvin*, No. 13-cv-00270-CL, 2014 WL 636549, at *7 (D. Or. Feb. 18, 2014) (stating that "the ALJ found that plaintiff's infrequent treatment history weighed against her credibility," and noting that "[e]vidence of conservative treatment is sufficient to discount evidence regarding the severity of a claimant's impairment"); SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996) (stating that an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints"). An ALJ, however, "may not reject symptom testimony where a claimant has a 'good reason' for not seeking treatment, i.e., the claimant is uninsured or unable to afford medical care." *Valdez v. Colvin*, No. 13-1149, 2014 WL 4265771, at *5 (C.D. Cal. Aug. 27, 2014). The record suggests that Taylor was uninsured and unable to afford medical care, but the record also makes clear that Taylor had ready access to a free medical clinic. Accordingly, the Court finds no error in the ALJ's analysis. *See Summers v. Colvin*, No. 12-cv-22-wmc, 2013 WL 6564451, at *6 n.4 (W.D. Wisc. Dec. 13, 2013) ("[W]hile Summers implies that she could not afford medical care after 2010, her medical records indicate that she continued to access treatment and medication for a variety of conditions at a free clinic. As a result, it was reasonable for the ALJ to conclude that she could have continued to seek help for her back as well.").

In short, the Court concludes that the ALJ's credibility determination is reasonable and supported by substantial evidence. *See Rollins*, 261 F.3d at 856 ("[T]he ALJ's interpretation of [the

relevant] testimony may not be the only reasonable one. But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it.").[7]

## B.    The ALJ Did Not Commit Harmful Error in Evaluating the Lay Witness Testimony.

### 1.    Applicable Law

An ALJ must consider lay witness testimony concerning a claimant's ability to work. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). Such testimony cannot be disregarded without providing specific reasons that are germane to each witness. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "Germane reasons for rejecting a lay witness' testimony [also] include inconsistencies between that testimony and the claimant's presentation to treating physicians or the claimant's activities, and the claimant's failure to participate in prescribed treatment." *Barber v. Astrue*, No. 10–1432, 2012 WL 458076, at *21 (E.D. Cal. Feb. 10, 2012).

### 2.    Application of Law to Fact

Although the ALJ discussed the lay witness testimony at length in her written decision, she only provided the following reason for discounting such evidence: "I find the . . . third-party witnesses are not credibly supported by the weight of the evidence to the extent inconsistent with the RFC." (Tr. 20.) Taylor argues that this was reversible error. The Court disagrees.

---

[7] The record also suggests that Taylor has made inconsistent statements regarding whether she drives, and her history of illicit drug use. (*See* Tr. 48, 51, 238, 321-22.) Those inconsistencies could have served as an additional basis for discounting Taylor's credibility. *See Smolen*, 80 F.3d at 1284 (noting that, in conducting a credibility analysis, an ALJ may consider "other testimony by the claimant that appears less than candid").

Page 16 - OPINION AND ORDER

Although the Court finds that the ALJ could have described the reasons for discrediting the lay witnesses with more specificity, the Court concludes that any alleged error was harmless in light of the Ninth Circuit's decision in *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). In *Valentine*, the court "held that when an ALJ provides clear and convincing reasons for rejecting the credibility of a claimant's own subjective complaints, and the lay-witness testimony is similar to the claimant's complaints, it follows that the ALJ gives 'germane reasons for rejecting' the lay testimony." *Williams v. Astrue*, 493 F. App'x 866, 869 (9th Cir. 2012). As discussed above, the ALJ provided clear and convincing reasons supported by substantial evidence in the record in finding Taylor not entirely credible. In addition, the record demonstrates that the lay witnesses generally repeat Taylor's allegations. (*Compare* Tr. 235-42, *with* Tr. 243-50, *and* Tr. 227-34.) Accordingly, it follows that the ALJ gave germane reasons for rejecting the lay testimony. *See Lee v. Colvin*, No. 13-809, 2015 WL 3770707, at *17 (D. Or. Apr. 20, 2015) (same).

## C.    Step Two Severity Findings

Taylor argues that the ALJ erred by failing to find that her bipolar disorder and posttraumatic stress disorder were severe impairments at step two of the five-step sequential process. The Court disagrees. *See Mondragon v. Astrue*, 364 F. App'x 346, 348 (9th Cir. 2010) ("Any alleged error at step two was harmless because step two was decided in [the claimant's] favor with regard to other ailments.") (citation omitted).

Taylor seems to suggest that the error became prejudicial at step four because the ALJ did not account for the fact that Taylor's bipolar disorder and posttraumatic stress disorder would cause her to be absent, tardy, or depart work early once a week, which the VE testified would preclude gainful employment. (*Compare* Pl.'s Br. at 15-16, *with* Pl.'s Br. at 23-24.) "An ALJ's RFC need only

Page 17 - OPINION AND ORDER

incorporate credible limitations supported by substantial evidence in the record and [it] must be consistent with the restrictions identified in the medical testimony." *Burke v. Comm'r of Soc. Sec.*, No. 13-1890, 2015 WL 769951, at *5 (D. Or. Feb. 23, 2015). Taylor has not pointed to any credible evidence indicating that her mental impairments would cause her to be absent, tardy, or depart work early once a week. Moreover, in fashioning the RFC and VE hypothetical, the ALJ appears to have accounted for all credible limitations resulting from Taylor's impairments by, among other things, limiting her to simple tasks and limiting her interaction and proximity to co-workers and the general public. In light of the foregoing, the ALJ did not err by failing to find that Taylor's bipolar disorder and posttraumatic stress disorder were severe impairments at step two of the sequential evaluation process.

## D.    Step Three Equivalence Determination

Taylor next argues that the ALJ erred by failing to conclude at step three of the sequential analysis that Taylor is presumptively disabled under listings 12.04 and 12.06.

Listings 12.04(B) (affective disorders) and 12.06(B) (anxiety-related disorders) both require that a claimant exhibit at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties maintaining social functioning; (3) marked difficulties maintaining concentration, persistence or pace; or (4) repeated episodes of decompensation, each of extended duration. *See Conkle v. Astrue*, 487 F. App'x 461, 462 n.1 (10th Cir. 2012) (describing Listing 12.04(B)); *Bordelon v. Astrue*, 281 F. App'x 418, 421 n.3 (5th Cir. 2008) (describing Listing 12.06(B)).

"'Marked' means more than moderate, but less than extreme." *Villa v. Colvin*, No. 12-94, 2013 WL 672410, at *3 (E.D. Cal. Feb. 25, 2013) (citation omitted). "Activities of daily living

include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(1). Social functioning refers to an individual's "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals," and it "includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." *Id*. § 12.00(C)(2).

Without citing to any record evidence, Taylor argues she has marked restriction of activities of daily living and marked difficulties in maintaining social functioning based on the above regulatory descriptions. (*See* Pl.'s Br. at 22-23.)The Court rejects Taylor's equivalence argument because she failed to point to any credible evidence demonstrating that she satisfies listing 12.04 and 12.06.[8] *Cf. Oltmanns v. Comm'r of Soc. Sec. Admin.*, 61 F. App'x 360, 361 (9th Cir. 2003) ("Oltmanns has not offered a theory as to how her impairments combine to equal a listed impairment nor pointed to evidence to demonstrate this theory, and we therefore reject her argument that the ALJ erred by failing to consider the combined effects of her impairments."). The Court also notes that: (1) Drs. Dennis and Kennemer reviewed the medical records and concluded that Taylor did not meet or equal listings 12.04 and 12.06; and (2) the testimony offered by Taylor and her friends, which was appropriately discounted by the ALJ, is the only record evidence that would arguably support Taylor's theory that she has marked restriction of activities of daily living and marked difficulties in maintaining social functioning. Accordingly, the Court affirms the ALJ's step three determination.

---

[8] The deficiency in Taylor's argument was pointed out by the Commissioner in her opposition brief, but Taylor did not address the matter in her reply brief. (*See* Def.'s Br. at 15; Pl.'s Reply at 1-6.)

**E.    The ALJ Fully and Fairly Developed the Record.**

Finally, Taylor argues that the ALJ erred by failing to develop the record regarding her physical and mental conditions. The Court concludes that the ALJ fulfilled her duty to develop the record.[9]

"In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001), and *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150. However, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459-60.

Here, Taylor argues that the record is inadequate or ambiguous with respect to her physical and mental conditions, because there are minimal treatment records in her file; only non-examining state agency physicians completed functional capacity assessments; only non-examining state agency psychologists completed psychiatric review technique forms, and the consultative report prepared by Dr. Smolen did not address whether Taylor has marked restriction of daily activities, marked

---

[9] The Court notes that Taylor chose to proceed without counsel during the hearing before the ALJ (Tr. 36-38), the ALJ thoroughly explained the nature of the hearing and the types of questions that would be posed (*id.*), and Taylor had previously participated in a Social Security disability determination (Tr. 37, 68, 83).

difficulties maintaining social functioning, or marked difficulties maintaining concentration, persistence, or pace (unlike the non-examining psychologists who addressed these very issues). (*See* Pl.'s Br. 12-15.)

The Court is not persuaded by Taylor's argument. Taylor has not cited, nor has the Court found, any case law from the Ninth Circuit indicating that an ALJ must obtain functional capacity assessments and psychiatric review technique forms from both treating and non-examining doctors in order for the record to be deemed fully and fairly developed. Here, the examining and non-examining doctors' opinions provided a comprehensive and unambiguous assessment of Taylor's limitations, and there was no need for the ALJ to supplement the record. Accordingly, the Court concludes that the ALJ fulfilled her duty to fully and fairly develop the record. *See Shepherd v. Astrue*, 2010 WL 883012, at *10 (D. Or. Mar. 9, 2010) ("The ALJ does not have a duty to recontact doctors, so long as the evidence in the record is adequate to make a determination regarding the claimant's disability.") (citation omitted).

## V. CONCLUSION

For all the reasons stated herein, the Court affirms the Commissioner's denial of Taylor's applications.

IT IS SO ORDERED.

Dated this 24th day of May, 2016.

_____
STACIE F. BECKERMAN
United States Magistrate Judge